UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

IMBEDDED ARTISTS INC., d/b/a MDM ARTISTS, a/k/a MDM ARTISTS, INC.,

                Plaintiff,

       v.

MARC KINCHEN p/k/a MK,

                Defendant.

**MEMORANDUM AND ORDER**

20-CV-3535 (LDH)(RLM)

---

L<small>A</small>SHANN D<small>E</small>ARCY HALL, United States District Judge:

    Imbedded Artists Inc., d/b/a MDM Artists, a/k/a MDM Artists, Inc. ("Plaintiff") brings the instant action against Mark Kinchen, p/k/a MK ("Defendant"), asserting claims for breach of contract, quantum meruit, unjust enrichment, declaratory judgment, and an accounting. Defendant moves, pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, to dismiss the complaint or, in the alternative, to stay this action pending the resolution of a related California state court proceeding.

## BACKGROUND[1]

    Plaintiff is a New York-based management company, which is owned and primarily operated by and through its two principals, Marci Weber and Mark Davenport. (Compl. ¶ 3, ECF No. 1; Weber Decl. Supp. Pl.'s Mem. Opp'n ("Weber Decl.") ¶ 1, ECF No. 17.) Defendant

---

[1] For the purposes of deciding a Rule 12(b)(1) motion to dismiss, the Court may refer to and rely on evidence outside the pleadings. *J.S., ex rel. N.S. v. Attica Cent. Sch.*, 386 F.3d 107, 110 (2d Cir. 2004) ("We may consider affidavits and other materials beyond the pleadings to resolve the jurisdictional issue, but we may not rely on conclusory or hearsay statements contained in the affidavits."); *see also Grossi v. City of New York*, No. 08-cv-1083, 2009 WL 4456307, at *3 (E.D.N.Y. Nov. 30, 2009) ("Where parties dispute subject matter jurisdiction, the Court can consider matters outside the pleadings, such as affidavits, documents, and testimony, to determine whether jurisdiction exists.") (collecting cases). Accordingly, the facts set forth in this memorandum and order are taken from the complaint, the declarations of Marc Kinchen, Marci Weber, Matthew S. Rosengart, and Ofer Reger, and documents appended to the declarations.

1

is a DJ,[2] performer, recording artist, and producer/remixer, domiciled in California. (Compl. ¶¶ 4, 9; Kinchen Decl. Supp. Def.'s Mem. ("Kinchen Decl.") ¶¶ 1–3, ECF No. 13.) Weber managed Defendant's career for approximately six years in the 1990s. (Compl. ¶¶ 9, 10; Weber Decl. ¶ 3.) In early 2009, Defendant and Plaintiff entered into a new management agreement. (Compl. ¶¶ 12–13; *see also id.*, Ex. A (the "2009 Agreement"), ECF No. 1-3.) Pursuant to the 2009 Agreement, Plaintiff managed Defendant's live performances, personal appearances, concerts, music recordings, music publishing, music production, music videos, and advertising. (2009 Agreement ¶ 63). In early 2015, Defendant and Plaintiff signed another personal management agreement. (Compl. ¶¶ 22–23; *see also id.*, Ex. B (the "2015 Agreement"), ECF No. 1-4.) The 2015 Agreement provided for a six-year term and gave Plaintiff the option to extend the term for four additional one-year periods, as well as an additional five-year renewal term unless either party timely objected to the renewal. (Compl. ¶ 29; 2015 Agreement ¶ 2(b).) Under the 2015 Agreement, Plaintiff would serve as Defendant's "exclusive personal manager in the entertainment industry" and "would advise and counsel [Defendant] in all aspects of [Defendant's] professional career in the entertainment industry." (Compl. ¶ 26; 2015 Agreement ¶ 1.) For its efforts, Plaintiff would receive 20 percent of Defendant's gross earnings from his activities in the entertainment industry in perpetuity, regardless of whether the agreement is terminated. (Compl. ¶¶ 29, 35; 2015 Agreement ¶¶ 4, 19.) The 2015 Agreement has a New York choice of law provision, but no choice of venue provision. (2015 Agreement ¶ 17.)

On June 12, 2020, prior to the expiration of the initial six-year term, Defendant, through his attorneys, sent Weber and Davenport a letter purporting to terminate his management agreement with Plaintiff. (Compl. ¶ 38; *see also* Reply Decl. of Matthew Rosengart ("Rosengart

---

[2] A "DJ" is also known as a disc jockey.

Reply Decl."), Ex. 1 (June 12, 2020 letter) at 1, ECF No. 21-1.) Plaintiff rejected the purported termination and indicated that it continued to be ready, willing, and able to perform under the 2015 Agreement. (Compl. ¶ 44.)

On July 29, 2020, Defendant filed a complaint in California Superior Court (the "California Action") against Weber, Davenport, Plaintiff, and John Does 1–10 regarding the 2015 Agreement. (*See* Rosengart Decl., Ex A ("Cal. Compl."), ECF No. 14-1.) In that complaint, Defendant asserted causes of action for (i) breach of fiduciary duty; (ii) fraud; (iii) unfair business practices in violation of the California Business and Professions Code; (iv) declaratory relief; (v) breach of contract; (vi) breach of the implied covenant of good faith and fair dealing; (vii) an accounting; (viii) unjust enrichment; and (ix) violation of California's Talent Agencies Act (the "TAA"). (*Id.* ¶¶ 44–102.) In the California Action, Defendant alleged, inter alia, that he was ambushed and misled into signing the 2015 Agreement and that it is not valid, or, in the alternative, that Plaintiff, Weber, and Davenport breached the agreement and their duties to Defendant. (*See id.* ¶¶ 56–58.) On the same day that Defendant commenced the California Action, he also filed a petition with a state administrative agency, the California Labor Commission ("CLC"), seeking relief under the TAA. (*See* Rosengart Decl., Ex. B (CLC Petition) ¶¶ 2, 23–28, ECF No. 14-2.)

One week later, Plaintiff filed the instant action. Here, Plaintiff alleges that Defendant breached the terms of the 2015 Agreement by, among other things, denying Plaintiff the exclusive right to manage Defendant, engaging a new manager to render services similar to those contemplated under the 2015 Agreement, and refusing to pay Plaintiff commissions. (Compl. ¶¶ 51–53.) Plaintiff alleges that, as a result of Defendant's conduct, Plaintiff suffered economic damages and reputational harm. (*Id.* ¶ 58.) In addition to an accounting and damages, Plaintiff

3

seeks a declaratory judgment validating its rights under, and compelling the enforcement of, the 2015 Agreement. (*Id.* ¶ 79.) Should the 2015 Agreement be deemed invalid or unenforceable, Plaintiff alternatively asserts causes of action for unjust enrichment and quantum meruit. (*Id.* ¶¶ 62–69, 71–74.)

## DISCUSSION

Where subject-matter jurisdiction exists, the Supreme Court has found that, under certain circumstances, a court should nonetheless abstain from hearing the case. *See Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 720–21 (1996) ("[W]e have held that federal courts may decline to exercise their jurisdiction, in otherwise 'exceptional circumstances,' where denying a federal forum would clearly serve an important countervailing interest."). "Whether to abstain is within the sound discretion of the district court." *Arkwright-Boston Mfrs. Mut. Ins. Co. v. City of New York*, 762 F.2d 205, 210 (2d Cir. 1985). However, because abstention is "an exception to a court's normal duty to adjudicate a controversy properly before it, the district court's discretion must be exercised within the narrow and specific limits prescribed by the particular abstention doctrine involved." *Dittmer v. Cnty. of Suffolk*, 146 F.3d 113, 116 (2d Cir. 1998). Of relevance here, under the *Colorado River* doctrine, a federal court may decline to exercise jurisdiction in exceptional circumstances "due to the presence of a concurrent state proceeding" and "for reasons of wise judicial administration." *Colorado River Water Conservation Dist. v. United States ("Colorado River")*, 424 U.S. 800, 818 (1976). Defendant maintains that the Court should abstain from hearing the instant action under the *Colorado River* doctrine in favor of the pending California Action. (Def.'s Mem. L. Supp. Mot. ("Def.'s Mem.") at 7–15, ECF No. 12.) The Court disagrees.

"In deciding whether to abstain under the *Colorado River* doctrine, a district court must first determine whether the federal and state court cases are parallel." *U.S. Bank Nat'l Ass'n as trustee Bank of Am., N.A. v. E. Fordham DE LLC*, 804 F. App'x 106, 107 (2d Cir. 2020); *see also Dittmer*, 146 F.3d at 118 ("[A] finding that the concurrent proceedings are 'parallel' is a necessary prerequisite to abstention under *Colorado River*."). Where the cases are parallel, the court then considers whether abstention is appropriate under the factors set out in *Colorado River*. *See Vill. of Westfield v. Welch's*, 170 F.3d 116, 121 (2d Cir. 1999) ("[A]lthough the test for *Colorado River* abstention is no 'mechanical checklist,' the district court *must* balance the relevant factors in reaching its decision." (emphasis in original) (citation and quotation marks omitted)).

## I. Whether the actions are parallel

"Suits are parallel when substantially the same parties are contemporaneously litigating substantially the same issue in another forum." *Dittmer*, 146 F.3d at 118 (quotation marks omitted) (quoting *Day v. Union Mines Inc.*, 862 F.2d 652, 655 (7th Cir.1988)). Here, Defendant rightly asserts that the instant action and the California Action are parallel because they are both based on the 2015 Agreement and involve the same parties, events, issues, and evidence. (Def.'s Reply Mem. L. Supp. Mot. ("Def.'s Reply") at 3, ECF No. 20.).

There is no question that the parties are substantially the same. That is, both the plaintiff and defendant here are parties to the California Action. That Weber, Davenport, and John Does 1–20 are also parties to the California Action does not, as Plaintiff urges, operate to defeat parallelism. *See First Keystone Consultants, Inc. v. Schlesinger Elec. Contractors, Inc.*, 862 F. Supp. 2d 170, 182 (E.D.N.Y. 2012) ("As an initial matter, all of the parties remaining in the instant Federal Action are also parties to the Queens Action. Although the Queens Action

5

involves an additional party, DDR, that fact does not render the proceedings non-parallel." (quotation marks omitted)); *see also Pike Co., Inc. v. Universal Concrete Prod., Inc.*, 284 F. Supp. 3d 376, 386 (W.D.N.Y. 2018) (collecting cases). This is so because "the requirement is that the parties be *substantially* the same—not completely identical." *Clark v. Lacy*, 376 F.3d 682, 686 (7th Cir.2004) (finding that the addition of parties to a proceeding does not destroy the parallel nature of the state and federal proceedings, particularly where the addition of those parties has "little impact on the overall similarity of the disputes"); *Lawrence Moskowitz CLU. Ltd. v. ALP, Inc.*, No. 19 CIV. 3868 (ER), 2020 WL 1503558, at *6–7 (S.D.N.Y. Mar. 30, 2020) (finding cases were parallel where parties to the state and federal actions were substantially the same but not identical), *aff'd*, 830 F. App'x 50 (2d Cir. 2020) (affirming district court decision to abstain on *Colorado River* grounds). The issues presented in the instant action and the California Action are also substantially the same. In the instant action, the Court must determine (i) whether the 2015 Agreement is valid, (ii) whether—assuming the 2015 Agreement is valid—Defendant breached the 2015 Agreement, and (iii) whether—assuming the 2015 Agreement is invalid—Defendant was unjustly enriched. Similarly, the parties ask the California state court to decide (i) whether the 2015 Agreement is valid, (ii) whether—assuming the 2015 Agreement is valid—Plaintiff, Weber, Davenport, or John Does 1–20 breached the agreement or the implied covenant of good faith and fair dealing, and (iii) whether—assuming the 2015 Agreement is invalid—Plaintiff was unjustly enriched. Moreover, in both cases, the plaintiffs seek money damages, declaratory relief, and an accounting. In other words, the causes of action and relief sought arise from the same facts and address the same core issues.

      Nonetheless, Plaintiff argues that because counterclaims have not been filed in either action, Defendant cannot show that either party's claims are identical between the two actions

and therefore the actions are not parallel. (Pl.'s Mem. L. Opp'n Mot. ("Pl.'s Opp'n") at 4–5, ECF No. 16.) Plaintiff is wrong.[3] The same argument was raised and rejected in *Lawrence Moskowitz CLU. Ltd. v. ALP, Inc.*, No. 19 CIV. 3868 (ER), 2020 WL 1503558, at *7 (S.D.N.Y. Mar. 30, 2020), *aff'd*, 830 F. App'x 50 (2d Cir. 2020). There, as here, the plaintiffs in a federal action were defendants in a pending state court action. *Lawrence Moskowitz CLU. Ltd.*, 2020 WL 1503558, at *1–2. There, as here, the plaintiffs in the federal action argued that the cases were not "*currently* parallel" because they had not yet asserted counterclaims in the state court action. *Id.* at *7. The court rejected this argument, noting that perfect symmetry is not required. *Id.* Rather, "[f]ederal and state proceedings are 'parallel' for abstention purposes when 'substantially the same parties are contemporaneously litigating substantially the same issue in another forum.'" *Id.* at *5 (quoting *Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist.*, 673 F.3d 84, 100 (2d Cir. 2012)). The court determined that because the issues in the federal action were "*presently*" at issue in the state court action, the two proceedings were parallel. *Id.* at *7 (emphasis in original); *see also U.S. Bank Nat'l Ass'n as trustee Bank of Am, N.A. v. E Fordham DE LLC*, 804 F. App'x 106, 107 (2d Cir. 2020) (finding no abuse of discretion in determination that cases were parallel where both actions centered on the same parties' loan modification agreement and whether either party had breached its obligations under that agreement); *Pike Co., Inc. v. Universal Concrete Prods., Inc.*, 284 F. Supp. 3d 376, 387 (W.D.N.Y. 2018) (finding parallelism where, even though the causes of action in the state and

---

[3] Both Plaintiff and Defendant primarily cite cases involving state and federal proceedings initiated by the same party. *See, e.g.*, *Telesco v. Telesco Fuel & Masons' Materials, Inc.*, 765 F.2d 356, 362 (2d Cir. 1985) (district court did not abuse its discretion in finding that a plaintiff's claim asserted in federal court was, in its "essential elements," the same cause of action that plaintiff asserted in the state court, such that the cases were parallel). In other words, the same party is plaintiff in both the state and federal actions. These cases are unhelpful to the Court. The Court instead looks to cases where defendant in one action is plaintiff in the other. *King v. Six Stars of New York, Inc.*, No. 16 Civ. 3291 (BMC), 2016 WL 4523920, at *3 (E.D.N.Y. Aug. 22, 2016) ("In *Colorado River* and the usual abstention case, it will be a defendant in one case that is a plaintiff in the other.").

federal proceedings were different, "[t]he main issue in [the federal] case—the rights and obligations of Plaintiff and Defendant under the [contract]—[wa]s already the subject of the State Action"). So too here.

## II. The *Colorado River* factors

Having found an identity of the parties, issues, and remedies, consideration of the *Colorado River* factors is warranted. *See Lawrence Moskowitz CLU. Ltd.,* 2020 WL 1503558, at *6 (finding, upon review of the respective complaints, that the state and federal actions were near-mirror images of each other and proceeding to determine that the *Colorado River* factors weighed in favor of abstention).

Under *Colorado River* the Court must weigh six factors:

> (1) the assumption of jurisdiction by either court over any res or property; (2) the inconvenience of the federal forum; (3) the avoidance of piecemeal litigation; (4) the order in which jurisdiction was obtained; (5) whether state or federal law supplies the rule of decision; and (6) whether the state court proceeding will adequately protect the rights of the party seeking to invoke federal jurisdiction.

*U.S. Bank Nat'l Ass'n as trustee Bank of Am., N.A.*, 804 F. App'x at 107 (citing *De Cisneros v. Younger*, 871 F.2d 305, 307 (2d Cir. 1989)).[4] The Court must assess these factors "with the balance weighted heavily in favor of the exercise of jurisdiction," *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 16 (1983), and "with the burden of

---

[4] In support of his motion, Defendant offers an analysis of a seventh factor—the "vexatious or reactive" nature of the federal action. (Def.'s Mem. at 14–15 (citing *Bernstein v. Hosiery Mfg. Corp. of Morganton*, 850 F. Supp. 176, 185 (E.D.N.Y. 1994)).) The Second Circuit has not formally cited this factor in its enumeration of the relevant considerations under *Colorado River*. It did, however, observe that, in a footnote in *Moses H. Cone Memorial Hospital v. Mercury Construction Corporation*, 460 U.S. 1 (1983), "the Supreme Court stated that it found considerable merit in the idea that the vexatious or reactive nature of either the federal or the state litigation may influence the decision whether to defer to a parallel state litigation under *Colorado River*." *Telesco,* 765 F.2d at 363 (quotation marks omitted). Here, even if the Court were to consider this informal factor, it would not tip the scales in favor of abstention. Defendant's argument—that because the federal and state actions are parallel, the federal action is vexatious and retaliatory—is unpersuasive. (Def.'s Mem. at 14–15.) Simply determining that two actions are parallel, without more, is not enough to find that the second-filed action is vexatious. Defendant raises no other convincing grounds to support a finding that the instant action is vexatious or reactive.

persuasion resting on the party opposing the exercise of federal jurisdiction." *Arkwright-Bos. Mfrs. Mut. Ins. Co.*, 762 F.2d at 210. "Where a *Colorado River* factor is facially neutral, that is a basis for retaining jurisdiction, not for yielding it." *Niagara Mohawk Power Corp. v. Hudson River-Black River Regul. Dist.*, 673 F.3d 84, 101 (2d Cir. 2012) (quotation marks omitted). "[The Court's] task . . . is to ascertain whether there exist 'exceptional' circumstances, the 'clearest of justifications,' that can suffice under *Colorado River* to justify the *surrender* of that jurisdiction." *Moses,* 460 U.S. at 25–26.

> **A. The courts' jurisdiction over any res or property, the order in which jurisdiction was obtained, and whether state or federal law supplies the rule of decision**

Three of the factors in the *Colorado River* abstention analysis can be addressed in short order. The first factor, whether either the state or federal court has assumed jurisdiction over any res or property, "point[s] toward [the] exercise of federal jurisdiction," because no res or property is at issue. *Vill. of Westfield*, 170 F.3d at 122 (citing *De Cisneros*, 871 F.2d at 307).

The fourth factor, the order in which jurisdiction was obtained, also weighs in favor of the exercise of federal jurisdiction. Under this factor, the Court looks at the relative progress of the parallel actions; priority is "not measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions." *Moses*, 460 U.S. at 21. Here, although the California Action was filed one week before the instant action and Defendant served Plaintiff with discovery requests in that case, the California Action was stayed pending a hearing on Plaintiff's application to stay the case.[5] (Rosengart Decl. ¶¶ 4–9, ECF No. 14; Pl.'s Opp'n at 13; Reger Decl. ¶ 9.) Similarly, in the instant action, there has been no significant

---

[5] On or about October 5, 2020, Plaintiff filed an ex parte application in the California Action to stay that action pending disposition of the related CLC petition filed by Defendant. (Decl. of Ofer Reger Supp. Pl.'s Opp'n ("Reger Decl.") ¶ 9, ECF No. 18.) The state court set a hearing on the stay application for January 22, 2021, and stayed the California Action until that hearing date. (*Id.*)

9

activity other than that related to Defendant's motion to dismiss.  Because neither case has progressed significantly, this factor weighs in favor of the exercise of jurisdiction.  *See McConnell v. Costigan*, No. 00 CIV 4598, 2000 WL 1716273, at *7 (S.D.N.Y. Nov. 16, 2000) ("Because neither case is significantly advanced, the factor weighs against abstention.").

In assessing the fifth factor— whether state or federal law supplies the rule of decision— "the presence of federal issues strongly advises exercising federal jurisdiction." *Vill. of Westfield*, 170 F.3d at 124.  However, "the absence of federal issues does not strongly advise dismissal, unless the state law issues are novel or particularly complex." *Id.*; *see also Arkwright–Boston Mfrs. Mur. Ins. Co.*, 762 F.2d at 211 (noting "[a]s all diversity suits raise issues of state law, their presence does not weigh heavily in favor of surrender of jurisdiction.").  Here, because there are no questions of federal law at issue and Defendant has not demonstrated that the state law issues implicated are complex or unique, this factor weighs in favor of abstention, but only slightly.  *See, e.g.*, *Goldentree Asset Mgmt., L.P. v. Longaberger Co.*, 448 F. Supp. 2d 589, 595 (S.D.N.Y. 2006) (finding the fifth factor to slightly favor abstention where the proceedings involved only issues of state contract law).

### B. The inconvenience of the federal forum

The second *Colorado River* factor is whether "the federal forum [is] any less convenient to the parties than the state forum." *Moses*, 460 U.S. at 19.  Here, this factor is neutral.  Defendant, who is likely to be an important witness in this case, resides in California. (Kinchen Decl. ¶¶ 2–3.)  Plaintiff is a New York corporation that has operated out of various locations, including New York and Europe.  (Weber Decl. ¶ 7.)  Davenport, a likely witness, resides in New York.  (*Id* ¶ 6.)  Weber, a principal of Plaintiff and also a potential witness, resides in Florida but maintains a residence in New York.  (*Id* ¶ 2.)  Weber and Davenport work out of

10

their residences or while traveling for work. (*Id.* ¶ 7.) Defendant works out of his home in California and performs in California, Europe, New York, and elsewhere. (Kinchen Decl. ¶ 5; Weber Decl. ¶¶ 7–9, 12.) Throughout the relevant period, Defendant occasionally traveled to New York for performances and meetings, though he performed primarily outside of the United States. (Weber Decl. ¶¶ 8–9.) Conversely, Davenport and Weber traveled outside of New York in connection with Plaintiff's career, primarily to Europe, but also to California and other U.S. cities. (*Id.* ¶¶ 7, 13; Kinchen Decl. ¶ 10.) Defendant has stated in his declaration that the 2015 Agreement was signed "at an airport outside of both Los Angeles and New York." (Kinchen Decl. ¶ 7.) While the 2015 Agreement does not contain any venue provision, it does contain a New York choice of law provision. (2015 Agreement ¶ 17.)

Based on these facts, the convenience of the federal forum factor favors the exercise of jurisdiction. *See Goldentree*, 448 F. Supp. 2d at 593 (federal court in New York found convenience factor to be neutral and therefore weigh in favor of the exercise of federal jurisdiction where (i) defendant corporation had its principal place of business in Ohio, did not have a New York office, and most of its witnesses were in Ohio, (ii) plaintiff's witnesses resided in New York, and (iii) the agreement contained a New York choice of law provision); *Estee Lauder Cos. Inc. v. Batra*, 430 F. Supp. 2d 158, 167 (S.D.N.Y. 2006) (New York federal district court found convenience factor to be "largely neutral" and therefore weigh against abstention where a former employee worked in California but reported to upper management in New York for a company headquartered in New York and was responsible for brands with significant functions in New York).

11

## C. The avoidance of piecemeal litigation

"It is well-settled that the third factor, the avoidance of piecemeal litigation, is the paramount consideration." *Estee Lauder*, 430 F. Supp. 2d at 167. "[T]he primary context in which [the Second Circuit has] affirmed *Colorado River* abstention in order to avoid piecemeal adjudication has involved lawsuits that posed a risk of inconsistent outcomes not preventable by principles of res judicata and collateral estoppel." *Woodford v. Cmty. Action Agency of Greene Cnty., Inc.*, 239 F.3d 517, 524 (2d Cir. 2001). Typically, such a risk is found "where all of the potentially liable defendants are parties in one lawsuit, but in the other lawsuit, one defendant seeks a declaration of nonliability and the other potentially liable defendants are not parties." *Id.*; *see, e.g.*, *De Cisneros*, 871 F.2d at 306–08 (abstaining from exercising jurisdiction over a case arising from an apartment complex fire where multiple parallel state court actions arising from the same incident involved parties not joined in the federal proceeding); *Gen. Star Int'l Indem., Ltd. v. Chase Manhattan Bank*, 57 F. App'x 892, 894 (2d Cir. 2003) ("The District Court correctly reasoned that, because the [state court defendants] other than General Star and AXA were not parties to the federal action, there is a risk of inconsistent outcomes not preventable by principles of res judicata and collateral estoppel." (internal quotation marks and italics omitted)); *Lawrence Moskowitz CLU Ltd.*, 2020 WL 1503558, at *8 (abstaining from exercising jurisdiction where federal court plaintiff sought enforcement of an agreement that defendant, in a parallel state court action, argued was the product of self-dealing and breaches of the duties of loyalty by individuals who were named defendants in the state court action but were not party to the federal action).

Citing *De Cisneros* and *General Star*, Defendant argues that abstention is appropriate because piecemeal litigation is inevitable. (Def.'s Mem. at 10–11.) But those cases are not

12

analogous to the instant action. In *De Cisneros*, the defendant in the federal action was also the defendant in multiple parallel state court proceedings brought by various plaintiffs not party to the federal action. 871 F.2d at 306–07. The Second Circuit found the risk of piecemeal litigation to weigh heavily in favor of abstention because the defendant "could face liability in two forums with the risk of inconsistent results." *Id.* at 308. The court reasoned that if the defendant was found liable in federal court, such judgment could be used preclusively in the state court actions. *Id.* But if the defendant was relieved of liability in federal court, it could nevertheless be found liable in state court actions brought by plaintiffs who were not a party to the federal litigation. *Id.* In *General Star*, the defendant in a federal action brought a parallel state court proceeding against the federal plaintiff and numerous other entities not party to the federal action. 2002 WL 850012, at *7. There, the court found the risk of piecemeal litigation to weigh in favor of abstention because "a decision from the New York Supreme Court could well preclude claims [in the parallel federal court litigation], but the reverse is not true (because many of the [state court defendants], are not parties to the federal case)." *Chase Manhattan Bank*, 2002 WL 850012, at *7. In both *De Cisneros* and *Chase Manhattan Bank*, the risk of inconsistent outcomes was not preventable by principles of res judicata or collateral estoppel, and abstention was therefore appropriate. The same is not true here.

In the instant action, Imbedded Artists is the sole plaintiff and Marc Kinchen is the sole defendant. In the state court proceeding, Kinchen brought claims against not only Imbedded Artists, but also Weber, Davenport, and John Does 1–20. (*See* Cal. Compl. at 1.) However, under both New York and California law, res judicata applies as against parties to a prior litigation and those in privity with them. *See Hellman v. Hoenig*, 989 F. Supp. 532, 536 (S.D.N.Y. 1998) ("[t]he doctrine of *res judicata*, or claim preclusion, provides that 'as to the

13

parties in a litigation and those in privity with them, a judgment on the merits by a court of competent jurisdiction is conclusive of the issues of fact and questions of law necessarily decided therein in any subsequent action.'" (quoting *In the Matter of Field Home–Holy Comforter v. DeBuono*, 657 N.Y.S.2d 943, 944 (2d Dep't. 1997))); *Plan. & Conservation League v. Castaic Lake Water Agency*, 180 Cal. App. 4th 210, 226 (2009), *as modified on denial of reh'g* (Jan. 14, 2010) ("Res judicata, or claim preclusion, prevents relitigation of the same cause of action in a second suit between the same parties or parties in privity."). Kinchen alleged in the state court complaint that "there is no corporate separateness between Weber and Davenport, on the one hand, and [Imbedded Artists] on the other[.]" (*See* Cal. Compl. ¶ 16.) Thus, as Plaintiff correctly asserts, a "decision concerning [Imbedded Artists] may very well have a preclusive effect against its principals[.]" (Pl.'s Opp'n at 11.) Defendant failed to address this assertion.[6] Defendant has not met his burden of establishing that the Court's exercise of jurisdiction would result in piecemeal litigation not preventable by principles of res judicata and collateral estoppel. The third factor, therefore, weighs in favor of retaining jurisdiction.[7]

---

[6] Neither party addresses the John Doe defendants. Perhaps this is because the state court complaint is devoid of any facts concerning the John Doe defendants that would permit a productive analysis. (Cal. Compl. ¶ 17.)

[7] Although Defendant does not raise the CLC action as a basis for finding a risk of piecemeal litigation, it is worth noting that at least one other court in this circuit has considered a motion for abstention under the *Colorado River* doctrine that involved a pending TAA claim. In *FaZe Clan Inc. v. Tenney*, the defendant had filed both a TAA claim with the CLC and a parallel California state court proceeding. 407 F. Supp. 3d 440, 442 (S.D.N.Y. 2019). The *Tenney* court found that the risk of piecemeal litigation was not sufficient to warrant abstention in light of a clear forum selection clause. *Id.* at 444. The court reasoned that because all three proceedings involved the same dispute between the same parties, "a decision in one proceeding would generally have preclusive effect in the other two, which significantly reduces any concern about piecemeal litigation." *Id.* at 443. The court recognized that there was still a risk of piecemeal litigation in the event that one proceeding holds that the CLC has exclusive jurisdiction over the TAA claim while another jurisdiction holds that the federal court in New York has exclusive jurisdiction over all other claims. *Id.* However, the *Tenney* court concluded that such an eventuality was too speculative to constitute the type of "extraordinary circumstances" that justify abstention under the *Colorado River* doctrine. *Id.* at 443–44. So too here. Furthermore, the Court finds no basis for abstaining under the *Colorado River* doctrine in favor a state administrative proceeding. The Court recognizes, however, that a pending TAA claim, which will likely be raised as a counterclaim in this action, may create complications, as it did at the motion for summary judgment phase in *Tenney*. *FaZe Clan Inc. v. Tenney*, 467 F. Supp. 3d 180, 194 (S.D.N.Y. 2020) (defendant moved for conditional summary judgment in his favor, arguing that, in the event that the CLC declares the agreement to be void under the TAA, such a holding would bar the plaintiff from recovering under a theory of

### D. Adequacy of state court proceedings

The sixth and final *Colorado River* factor is whether the state court proceeding will adequately protect the rights of the party seeking to invoke federal jurisdiction—in this case, Plaintiff. "[F]ederal courts are to determine whether the 'parallel state-court litigation will be an adequate vehicle for the complete and prompt resolution of the issues between the parties.'" *Vill. of Westfield*, 170 F.3d at 124 (quoting *Moses*, 460 U.S. at 28). "If there is any substantial doubt as to this, it would be a serious abuse of discretion to grant the . . . dismissal at all." *Moses*, 460 U.S. at 28. "Although any possible inadequacy of the state forum to protect the federal plaintiff's rights would provide a strong reason to exercise federal jurisdiction, the adequacy of the state forum does not weigh heavily in favor of dismissal pursuant to *Colorado River*." *Estee Lauder*, 430 F. Supp. 2d at 169. Put differently, this factor "is significant only if it militates in favor of federal jurisdiction" where the court might otherwise abstain. *Zemsky v. City of New York*, 821 F.2d 148, 153 (2d Cir. 1987).

Defendant correctly argues that there is no basis here for finding that the state court will not adequately protect Plaintiff's rights. (Def.'s Mem. at 13–14.) Plaintiff's arguments to the contrary are unavailing.

*First*, Plaintiff contends that the California state court is inadequate to protect Plaintiff's rights because of the slow pace of CLC actions generally.[8] (Pl.'s Opp'n at 14–15.) Plaintiff claims that CLC decisions are typically resolved in two to three years but curiously offers as an

---

unjust enrichment). Such complications may be avoided by staying the instant action pending the CLC's determination of the TAA claim only.

[8] All claims arising under the TAA must be referred to the CLC for a determination, which can then be appealed to the superior court of California to be heard *de novo*. *Styne v. Stevens*, 26 Cal. 4th 42, 54–56 (2001) ("When the [TAA] is invoked in the course of a contract dispute . . . a claim to this effect must first be submitted to the Commissioner, and that forum must be exhausted, before the matter can be determined by the superior court."). Such an appeal may be consolidated with the pending superior court contract action. *Id.* at 62, n.14.

15

example a decision that was issued in just over a year and a half. (Pl.'s Opp'n at 14.) In any event, that decision has no bearing on the pace of the state court proceeding at issue here. An unrelated administrative proceeding is not the proper point of comparison. In considering the pace of the state court litigation in the context of this sixth factor, courts look to the pace of the state court proceeding that is parallel to the federal action at issue, not the pace of an unrelated administrative proceeding, as Plaintiff urges the Court to do here. *See, e.g.*, *Vill. of Westfield*, 170 F.3d at 124 (considering the pace of the parallel state court proceedings to determine whether the state court would adequately protect the rights of the party seeking to invoke federal jurisdiction); *cf. Celotto v. Ryan*, No. 16-cv-1038V, 2020 WL 1678053, at *5 (W.D.N.Y. Mar. 13, 2020) (holding that the *Colorado River* abstention doctrine may be invoked where there are parallel judicial proceedings, but not where one of the allegedly parallel "litigations" is a state administrative proceeding), *report and recommendation adopted*, 2020 WL 1677368 (W.D.N.Y. Apr. 6, 2020). That the state court action may be stayed pending resolution of the relevant CLC proceeding is not enough. There is no indication here that the relevant CLC proceeding will cause the state court litigation to be so delayed as to render it inadequate to protect Plaintiff's rights. *Cf. Vill. of Westfield*, 170 F.3d at 124 (finding state court proceeding to be an inadequate vehicle for prompt resolution of plaintiff's claims where it had endured for *thirteen years* with little progress (emphasis added)).

*Second*, Plaintiff argues that the State Court is inadequate to protect Plaintiff's rights because of the "well-known anti-manager bias of the TAA." (Pl.'s Opp'n at 14.) But even if the Court were to assume that the TAA's regulatory scheme were so biased, the nature of the regulatory scheme does not speak to the adequacy of the California state courts. As the Supreme Court of California noted, courts "have no authority to rewrite the regulatory scheme . . . whether

16

the present state of affairs is satisfactory is for the Legislature to decide, and [the courts] leave that question to the Legislature's considered judgment." *Marathon Ent., Inc. v. Blasi*, 42 Cal. 4th 974, 999 (2008), *as modified* (Mar. 12, 2008). Against this backdrop, Plaintiff's second argument fails.

*Third*, Plaintiff urges the court to engage in a "choice of law" analysis. (Pl.'s Opp'n at 9.) As a threshold matter, the choice of law analysis is premature at this stage. Moreover, simply because this Court sits in New York does not render it better suited to apply New York law than the California court. *See Loral Fairchild Corp. v. Matsushita Elec. Indus. Co.*, 840 F. Supp. 211, 217 (E.D.N.Y. 1994) ("Simply because this court sits in New York does not mean that it can apply New York state law any better than the California court."). The Court does not doubt the ability of the California state courts to apply New York law or to engage in the appropriate choice of law analysis.

In the absence of a persuasive reason for this Court to find the state forum inadequate to protect Plaintiff's rights, this factor is neutral, and therefore weighs in favor of the exercise of jurisdiction. *See Estee Lauder*, 430 F. Supp. 2d at 169 ("[T]he ability of the California court to adequately protect Estee Lauder's interests renders the sixth factor largely neutral.").

\*   \*   \*

The first, second, fourth, and sixth factors, none of which carry significant weight, are neutral and therefore weigh slightly in favor of the exercise of federal jurisdiction. The third factor, which carries significant weight, weighs strongly in favor of retaining federal jurisdiction. The fifth factor alone weighs in favor of abstention, and then only slightly. On balance, the six *Colorado River* factors weigh in favor of exercising federal jurisdiction over this action.

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss or stay Plaintiff's complaint is DENIED.

                                                           SO ORDERED.

Dated: Brooklyn, New York                  /s/ LDH
       February 7, 2022                      L<small>A</small>SHANN D<small>E</small>ARCY HALL
                                             United States District Judge